UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LAMONT D JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:16-cv-01439-TWP-DML |
| | ) |
| NANCY A. BERRYHILL, | ) |
| | ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Lamont D. Johnson ("Johnson") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). For the following reasons, the Court **AFFIRMS** the decision of the Commissioner.

## I. BACKGROUND

### A. Procedural History

On April 1, 2013, Johnson filed an application for SSI, alleging a disability onset beginning June 1, 2007. The initial claim was denied on June 3, 2013, and again on reconsideration on August 21, 2013. (Filing No. 19-4 at 11.) Johnson filed a timely request for a hearing on August 26, 2013. (Filing No. 19-4 at 18.) He appeared and testified at a hearing held before Administrative Law Judge James R. Norris (the "ALJ") on November 4, 2014. On November 25, 2014, the ALJ issued a written decision denying Johnson's applications for SSI. (Filing No. 19-2 at 18.) Johnson requested review by the Appeals Council, which denied the request on April 28, 2016, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. (Filing No. 19-2 at 2.) On June 13, 2016, Johnson filed this action for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g). (Filing No. 1.)

B.     **Factual Background**

Johnson was born in 1980 and was 26 years old at the time of his alleged disability onset. He was 33 years old at the time of the ALJ's decision and is now 37 years old. Johnson attended school through the tenth or eleventh grade (Filing No. 19-8 at 78), and participated in multiple special education classes (Filing No. 19-6 at 44). His only work history occurred between 1997 and 2001, when he was employed full-time as a janitor. (Filing No. 19-5 at 22.) He has not held employment since. (Filing No. 19-2 at 51.)

In April 2008, Johnson sustained a gunshot injury to his left elbow. (Filing No. 19-8 at 35.) He underwent surgery and was evaluated by an occupational therapist afterwards, but he did not make recurring visits. *Id.* at 41, 46. In September 2009, Johnson was bitten on the arm by a police dog. *Id.* at 51. Medical records indicate a limited range of motion in his elbow as the result of pain, but findings were otherwise unremarkable. *Id.* at 52. Johnson again consulted with an occupational therapist, but there are no records of follow-up or evidence of functional limitations regarding the dog bite. *Id.* at 57.

In his initial application for benefits, Johnson claimed disability as the result of the gunshot injury, the dog bite injury, and illiteracy. (Filing No. 19-6 at 2.) Physically, he reported that his left arm "tingles and locks up" and "does not have very much strength." *Id.* at 8. Functionally, Johnson noted that he "can't fill out applications" and "had trouble working" because he "never learned how to read" when he was in school. *Id.* As part of the disability process, Johnson underwent a medical consultative examination in January 2010. The examiner, Dr. Bilal Safadi, noted that Johnson was not in apparent distress and was able to get on and off the examination table. Findings from the visit were unremarkable other than notations of both diminished strength in Johnson's upper left extremity and decreased grip strength in Johnson's left hand. (Filing No.

19-8 at 21.) Johnson underwent a second consultative examination in March 2013, conducted by Dr. Mauro Agnelneri. Dr. Agnelneri found no impairment relating to Johnson's gunshot wounds and noted unremarkable findings concerning Johnson's upper extremities. *Id.* at 97-98. Dr. Agnelneri further reported that Johnson followed simple and complex directions and commands without difficulty, had intact recent and remote memory, and had grossly normal intellectual functioning (Filing No. 19-9 at 96). Finally, Johnson attended a third medical consultative examination in June 2014 with Dr. Diane Elrod. Clinical findings were unremarkable beyond Johnson's reports of "chronic pain". *Id.* at 100-02.

Johnson underwent psychological examinations as well. During one such examination, with Dr. Herbert Henry ("Dr. Henry") in January 2007, he reported he was unable to work because his inability to read, spell, and write kept him from filling out job applications. *Id.* at 109. Education records indicate that Johnson attended special education classes and performed below grade level while in school. (Filing No. 19-6 at 46, 51.) Cognitive testing conducted in a second psychological examination in 2014, when Johnson was 33, revealed Johnson's full scale IQ as 62—in the "extremely low" range of intellectual functioning. (Filing No. 19-9 at 3.) In a 2014 consultative examination, conducted by Dr. Jason Hankee ("Dr. Hankee"), Johnson was also diagnosed with depressive disorder, anti-social personality features, and mild intellectual disability. *Id.* Dr. Hankee completed a medical source statement form and indicated that Johnson had mild-to-moderate restrictions in his ability to understand, remember, and carry out instructions; and had only mild restrictions in his ability to interact appropriately with supervision, co-workers, and the public, as well as respond to changes in the routine work setting. (Filing No. 19-9 at 7-8).

3

At the hearing before the ALJ, Dr. Mark Farber, an independent medical expert, testified that Johnson had left arm pain and limitations due to his gunshot wound but no medically determinable physical impairments. ([Filing No. 19-2 at 42](#).) Dr. Farber testified that, based upon his review of the medical record, no objective or clinical evidence exists to support Johnson's alleged restrictions or pain. *Id.* at 43.

In addition, impartial psychological expert Dr. James Brooks ("Dr. Brooks") testified at the hearing. Dr. Brooks found that, at the time of the hearing, Johnson's mental impairments included borderline intellectual functioning, depressive disorder, and anti-social disorder. *Id*. at 47. Dr. Brooks concluded that Johnson had mild limitations in his ability to maintain concentration, persistence, and pace. *Id.* As a result, Dr. Brooks concluded that Johnson was able to perform simple, repetitive tasks and have occasional contact with others. *Id.* at 47-48.

**C.     The ALJ's Decision**

The ALJ first determined that Johnson met the insured status requirement of the Act through December 31, 2017. The ALJ then began the five-step analysis. At step one, the ALJ found that Johnson had not been involved in substantial gainful activity since April 1, 2013, the application date. ([Filing No. 19-2 at 23](#).) At step two, the ALJ found that Johnson had "the following severe impairments:  pain residuals of gunshot wound, depression, anti-social personality disorder, and borderline intellectual functioning." *Id.* The ALJ also found that Johnson had a non-severe impairment "consisting of dog bite." *Id.* at 23-24. At step three, the ALJ concluded that Johnson does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 24.

The ALJ then determined that, while Johnson had no past relevant work, he had a residual functional capacity ("RFC") to perform medium work in the form of simple and repetitive tasks, with superficial or occasional interaction with others and allowance for oral and demonstrative instructions. *Id.* at 26. At step five, the ALJ determined that Johnson was not disabled because there are jobs that exist in significant numbers in the national economy that Johnson could perform, considering his age, education, work experience, and RFC. These jobs include dishwasher, hospital cleaner, and janitor. *Id.* at 32. Therefore, the ALJ denied Johnson's application for SSI because he was found to be not disabled.

## II. DISABILITY AND STANDARD OF REVIEW

Under the Act, a claimant may be entitled to SSI only after he establishes that he is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, he is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At

step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then his residual functional capacity will be assessed and used for the fourth and fifth steps. Residual functional capacity is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work in the relevant economy, given his RFC and considering his age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if he can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Section 405(g) of the Act gives the court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d

1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold the ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. DISCUSSION

In his request for judicial review, Johnson asserts three bases for remanding this case to the ALJ for further consideration.[1] First, he contends substantial evidence does not support the ALJ's determination that he did not meet a listing under 12.05. (Filing No. 21 at 1.) Second, the ALJ's hypothetical question to the vocational expert ("VE") did not take into account his acknowledged difficulties in maintaining concentration, persistence, and pace. *Id.* Finally, the ALJ erroneously concluded that he had a "limited" education. The Court will address each contention in turn. *Id.*

**A.** **The ALJ adequately considered Johnson's intellectual abilities and properly concluded that they did not meet any listing under 12.05.**

---

[1] Johnson requests reversal of the Commissioner's final decision, or in the alternative, reversal with a remand for a rehearing to correct harmful errors. (Filing No. 23 at 17.)

7

Listing 12.05, which covers intellectual disabilities, provides:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. . . . The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.[2]

Listing 12.05. Thus, in order for an individual to meet any listing under 12.05, he or she must demonstrate subaverage general intellectual functioning, have deficits in adaptive functioning that first manifested before the age of 22, and meet the requirements of one of four subsections. Subsection (C) specifically requires a claimant to have "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]" Listing 12.05. Subsection (D), alternatively, requires a claimant to demonstrate –

> A valid verbal, performance, or full scale IQ of 60 through 70, resulting in two of the following:
>
>   1. Marked restriction of activities of daily living; or
>   2. Marked difficulties in maintaining social functioning; or
>   3. Marked difficulties in maintaining concentration, persistence, or pace; or
>   4. Repeated episodes of decompensation, each of extended duration.

Listing 12.05.

At the outset, the Court notes that Johnson claims to meet a listing under 12.05(C). He takes issue with the Commissioner's decision, which he argues addresses only 12.05(D). (Filing No. 23 at 3.) While subsections (C) and (D) indeed have different requirements, the umbrella section of 12.05 itself includes the requirement that an individual demonstrate "significantly

---

[2] While the Commissioner revised the regulations in September 2016 and altered the subsections of 12.05, this Court considers the rule as it existed in November 2014. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138 n.1 (Sept. 26, 2016). ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions. If a court reverses our final decision and remands a case for further administrative proceedings after the effective date of these final rules, we will apply these final rules to the entire period at issue in the decision we make after the court's remand.").

subaverage general intellectual functioning *with deficits in adaptive functioning* initially manifested during the developmental period." Listing 12.05 (emphasis added).

In this case, the ALJ found that Johnson did not meet any listing under 12.05, including 12.05(C), because "the evidence fails to demonstrate the required deficits in adaptive functioning." The ALJ explained this decision, reasoning that Johnson "is able to care for his personal hygiene, prepare simple meals, and go grocery shopping" and "has a history of unskilled work." ([Filing No. 19-2 at 26](#).)

Johnson contends that the ALJ's reasoning did not meet the standards for limitations in adaptive functioning set forth by the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders, Text Revision* ("DSM-IV-TR"). He argues that the ALJ "improperly played doctor" and made "a medical judgment beyond his [] own ken." ([Filing No. 21 at 19](#).)

The Seventh Circuit, recognizes that the key term in the introductory paragraph of 12.05 is "deficits in adaptive functioning," which it defined as one's "inability to cope with the challenges of ordinary everyday life." *Novy v. Astrue*, 497 F.3d 708, 710 (7th Cir. 2007). The claimant in *Novy* had an IQ of 69 and a diagnosis of "mental retardation," but because she could cope with the challenges of ordinary life, she was not found disabled. *Id.* In analyzing whether adaptive deficits exist, an ALJ is not required to use a specific measurement method. *Charette v. Astrue*, 508 F. App'x 551, 553 (7th Cir. 2013). In *Charette*, the claimant argued that because the ALJ did not adhere to the same DSM-IV-TR standards that Johnson cites, the ALJ erred in denying him benefits. The *Charette* court affirmed the ALJ's decision, stating that "[b]ecause the ALJ examined [the claimant's] ability to cope with the challenges of daily life, she applied the correct

9

legal standard." *Id*. (holding that ALJ's failure to use DSM-IV-TR method to measure adaptive functioning was not error).

Johnson also argues that the ALJ did not sufficiently consider (or understand) the opinions of Dr. Henry and Dr. Hankee on the ground that their diagnoses of Johnson's mental retardation satisfy the 12.05 umbrella requirement. (Filing No. 23 at 17.) The ALJ in fact gave significant weight to Dr. Henry's and Dr. Hankee's reports. (Filing No. 19-2 at 31.) But, as in *Novy*, Johnson's IQ scores and mental retardation diagnoses are together insufficient to classify him as disabled without a further showing of adaptive functioning deficits. The issue is not that the ALJ did not understand the medical testimony, as Johnson argues; the relevant issue is that Johnson does not in fact "meet Listing 12.05(C)'s first requirement (by virtue of [Dr. Henry's and Dr. Hankee's] diagnoses of intellectual disability (mental retardation))." (Filing No. 23 at 9.)

In this case, the ALJ applied the correct standard by examining whether Johnson exhibited any deficits in adaptive functioning. The ALJ looked to Johnson's ability to cope with everyday challenges and enumerated specific examples in support of his decision. While Johnson may not agree with the ALJ's determination, substantial evidence exists to support the ALJ's conclusion. Thus, Johnson's argument for remand on this basis falls short.

**B.    The ALJ's RFC determination and hypothetical question to the vocational expert adequately accounted for Johnson's moderate limitation in maintaining concentration, persistence, and pace.**

When posing a hypothetical question to a VE, an ALJ must fully disclose all of a claimant's limitations—including those involving concentration, persistence, and pace. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). The Seventh Circuit has maintained "no per se requirement that this specific terminology ('concentration, persistence and pace') be used in the hypothetical in all cases." *O'Connor-Spinner*, 627 F.3d at 619. In fact, where a psychological

expert or medical source of record "translated [his] findings into a specific RFC assessment" that did not mention concentration, persistence, or pace, the ALJ "reasonably relied upon his opinion in formulating the hypothetical to present to [the VE]." *Johansen v. Barnhart*, 314 F.3d 283, 289 (7th Cir. 2002).

While the ALJ in this case did not specifically enumerate Johnson's limitations in terms of concentration, persistence, and pace to the VE, the ALJ's hypothetical questions were adequate because they directly reflected the RFC that accounted for those limitations, as assessed by the psychological expert's testimony ("PE"). At the end of his testimony, the PE concluded, "In terms of the mental residual functional capacity assessment form, as I looked at this record overall, I think there would be the ability to do simple repetitive tasks." (Filing No. 19-2 at 47.) He added that "there could certainly be occasional superficial interactions with others." Subsequently, when posing his hypothetical question to the VE, the ALJ asked the VE to assume an individual, in part, with "no past relevant work and . . . able to perform medium work as defined by the regulations. Furthermore, the work must be simple and repetitive with only superficial interaction with others[.]" (Filing No. 19-2 at 52.) The PE's RFC determination was adopted by the ALJ, and the ALJ's subsequent hypothetical question—stemming from that RFC—was adequate. While it is possible that the VE may have disagreed with the ALJ's RFC conclusion, those determinations "are reserved exclusively to the Commissioner." *Johansen*, 314 F.3d at 283; *see also* 20 C.F.R. § 404.1527(d)(2). In this case, substantial evidence exists to support the ALJ's determination.

C. **The ALJ did not sufficiently support his determination that Johnson had a limited education, but that error was harmless.**

The Commissioner regards a limited education as "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs." 20 C.F.R. § 404.1564(b)(3).

11

It is generally considered that a formal education ending between the 7th and 11th grades constitutes a limited education. *Id.* If no other evidence exists to contradict a claimant's numerical grade level, that grade level will be used to determine a claimant's educational abilities. *Id.*

In this case, the ALJ determined that Johnson had a limited education solely because he completed the tenth grade. ([Filing No. 19-2 at 32.](Filing No. 19-2 at 32)) Johnson argues for remand on the ground that this analysis was inadequate, given his claims of illiteracy and evidence on the record of his below-grade-level performance. The Commissioner replies by also citing to the record, pointing towards Johnson's "fairly good" high school grades and GPA. ([Filing No. 19-2 at 45.](Filing No. 19-2 at 45)) While the facts cited by the Commissioner are not incorrect, they "are not reasons that appear in the ALJ's opinion, and thus they cannot be used here." *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010). Where a claimant's literacy is in question, the Seventh Circuit has held that "at a minimum, the ALJ is required to further explore the question." *Heldenbrand v. Chater*, 132 F.3d 36 (7th Cir. 1997). The ALJ did not do that here.

Johnson's argument for remand however, is unavailing. Where an erroneous education level determination has no bearing on the outcome of a case, the error is harmless. *Sibley v. Shalala*, 863 F. Supp. 801, 805–06 (N.D. Ill. 1994) ("The level of plaintiff's education—whether high school or anything less than high school—is of no consequence when his age and [work] capacity . . . are factored into the analysis."). Johnson concedes that "[t]his argument standing alone does not warrant granting Mr. Johnson judicial relief." ([Filing No. 21 at 26](Filing No. 21 at 26)). Even if Johnson's education level was determined differently on remand, the end result would remain the same—Johnson would not be found disabled. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 2, 203.25 (based on finding that claimant was able to perform medium work). Because Johnson has not

otherwise explained why an alternative finding would be relevant, the ALJ's inadequate explanation for determining Johnson's education level is harmless and merits no remand.

### IV. **CONCLUSION**

For the reasons set forth above, the final decision of the Commissioner is **AFFIRMED**. Johnson's appeal is **DISMISSED**.

**SO ORDERED.**

Date: 3/16/2018

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

J. Frank Hanley, II
LAW OFFICES OF J. FRANK HANLEY II, INC.
jfrankhanley@jfrankhanley.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov